# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:19-cv-00147-MR

MICHAEL BENANTI,          )
                            )
           Plaintiff,       )
                            )
vs.                        )
                            )     __MEMORANDUM OF__
RORY P. POYNTER, et al.,   )     __DECISION AND ORDER__
                            )
           Defendants.    )
_____  )

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss. [Doc. 13]. Also pending are Plaintiff's Motion to Substitute Defendants [Doc. 16] and Motion for Leave to File Sur-Reply [Doc. 21].

## I.   BACKGROUND

The incarcerated Plaintiff, proceeding *pro se*, filed this action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), for the alleged violation of his civil rights in connection with a federal criminal prosecution. He names as Defendants: Rory P. Poynter, Jeff S. Blanton, Mickey R. Nocera, Brian O'Hara, and Reanna O'Hara, who are all FBI special agents; and David P. Lewen, an Assistant United States Attorney, and asserts claims against these Defendants in both their individual and official capacities.

Plaintiff alleges that Defendants violated his constitutional rights with regards to an investigation and prosecution in the Eastern District of Tennessee, Criminal Case No. 3:15-cr-00177-TAV-DCP-1 ["CR"].[1]  Plaintiff alleges that Defendants knowingly submitted a search warrant affidavit to the Western District of North Carolina that contained material misrepresentations in violation of the Fourth Amendment, and that Defendant Blanton knowingly presented false evidence at a suppression hearing challenging that search warrant before the Tennessee district court in violation of the Fifth Amendment.

The Sixth Circuit Court of Appeals summarized the criminal case as follows:

> From 2014 to 2015, Michael Benanti and Brian Witham executed a string of bank robberies.  The first was old-fashioned: the two men wore masks and brandished sawed-off shotguns while directing bank employees to give them cash from the vault. The others were more like bank extortion: Benanti and Witham would kidnap a bank executive along with his family and— holding the family hostage—force the executive to bring them cash from the bank's vault. In 2015, for example, Benanti and Witham broke into the Tennessee home of a bank executive, Tanner Harris, and took his wife and infant son hostage.  Benanti and Witham ordered Harris to bring them money from the bank's vault, which Harris did in the amount of $190,000.

---

[1] The Court does not attempt to include an exhaustive procedural history of the Tennessee criminal, appellate, or post-conviction proceedings in this Order.  A Bill of Indictment was also filed against Plaintiff in this Court, Criminal Case No. 1:15-cr-00102-MR, on multiple firearms offenses and other charges, but the prosecutor dismissed the case following Plaintiff's conviction in Tennessee.

On September 3, 2015, two North Carolina State Highway Patrol cars tried to pull over Benanti and Witham (the driver) for speeding. Witham pulled onto the shoulder, but barely out of the traffic lane, and momentarily came to a stop. Then Benanti opened the passenger door. As the troopers pulled behind them, however, Witham sped away and before long struck three other vehicles. Benanti and Witham then fled into the woods on foot, carrying large black duffel bags. Police feared an ambush and gave up the chase.

Trooper Greg Reynolds, a North Carolina Highway Patrol officer, received the dash-cam footage of the September 3rd chase. He reviewed the footage between five and ten times, noting the chase's irregularity. He also noticed the passenger's appearance: white, heavy-set, with a bald spot on the back of his head.

Meanwhile, FBI agents joined the investigation, suspecting that the two men from the chase were the same men who had kidnapped a bank executive a few months before. The agents recovered a GPS device from the SUV that the men had crashed during the chase. From that device's memory, FBI agents obtained coordinates corresponding to an area near a cabin at 124 Rebel Ridge Road in Maggie Valley, North Carolina. The cabin's property manager told them that two men had rented the cabin and had recently moved to another at 380 Allison Drive.

State and federal agents began surveilling that address. Weeks later, they saw Benanti and Witham leave in a Pathfinder SUV with stolen license plates. The agents notified Reynolds that two men suspected of various bank robberies were traveling in a Pathfinder with stolen plates, and that the men were suspected to be the same ones who had fled on September 3rd. Soon Reynolds spotted the Pathfinder, confirmed that the plates were stolen, and turned on his emergency lights and siren. As in the September 3rd chase, the vehicle pulled over, but barely out of the traffic lane. The passenger door opened. Out came a heavy-set white man with a bald spot on the back of his head. He was holding a large black duffel bag. The Pathfinder then

3

sped back onto the highway, just as the SUV on September 3rd had done. But this time it left the passenger, Benanti, behind.

Reynolds arrested Benanti, thinking that he was the same passenger who had fled on September 3rd. From Benanti's clenched fist, Reynolds took a crumpled piece of paper that listed the names, home addresses, and bank addresses of three bank executives. In the duffle bag, the police found a camera, monocular scope, and rubber gloves. Meanwhile, police caught Witham. Officers searched the Pathfinder and found another GPS device, a smartphone labeled "Operations 1," and black gloves.

Officers then obtained a search warrant for the cabin at 380 Allison Drive,[2] where they found more evidence. Eventually, a federal grand jury charged Benanti with 23 offenses, including conspiracy to commit robbery, armed bank extortion, carjacking, and kidnapping.

Before trial, Benanti filed two motions to suppress evidence: in the first, he argued that Reynolds did not have probable cause to arrest Benanti; in the second, that the affidavit in support of the warrant to search the cabin contained false information and failed to establish probable cause.[3] Benanti also asked the district court for a Franks[4] hearing as to whether the officers had used false information to obtain that warrant.[5] The

_____

[2] The cabin at 380 Allison Drive is also referred to as "Southern Comfort." [See CR Doc. 33 at 6].

[3] Plaintiff raised issues including lack of nexus between the alleged crimes, the individuals involved, and the places and things to be searched, and staleness. [CR Doc. 33 at 1-16].

[4] Franks v. Delaware, 438 U.S. 154, 156 (1978).

[5] Plaintiff asserted "[t]he presence of a material misrepresentation in the affidavit," *i.e.*, that "two masked white males and a masked white female" accosted the victims of the Y-12 attempted robbery whereas a victim described her assailants as one Black male and one white male. [CR Doc. 33 at 17-18]. Plaintiff argued that this misleading reference to "two white males" is repeated throughout the affidavit and falsely suggested a nexus between the alleged crimes, 380 Allison Drive, and the subjects. [Id.].

district court denied Benanti's motions, and thereafter conducted a trial with over 40 government witnesses—including Witham. The jury convicted Benanti of all charges.[6]

United States v. Benanti, 755 F. App'x 556, 557-58 (6th Cir. 2018).

While Plaintiff was represented by counsel, Plaintiff filed a *pro se* motion to be granted co-counsel status or to proceed *pro se*. The Tennessee district court allowed Plaintiff to represent himself only with regards to filing a motion for a new trial. [See CR Doc. 163]. In his *pro se* Motion for New Trial, Plaintiff purported to raise only a claim of prosecutorial misconduct; however, he went on to state that "if th[e] court finds the misconduct likely affected the judgment of the jury the by-product might be a new probable cause determination and suppression of the evidence found at 380 Allison Dr. and subsequent searches." [CR Doc. 169 at 2-3]. Plaintiff argued that "there were at least 3 knowingly false statements inside the affidavit to search 380 Allison Dr." that were reinforced at the June 2, 2016 suppression hearing. [CR Doc. 169 at 4]. He went on to identify numerous allegedly knowing misrepresentations in the warrant affidavit including (renumbered):

---

[6] Specifically, Plaintiff was convicted of one count of conspiracy to commit Hobbs Act robbery and extortion; one count of possession of a firearm during and in relation to a crime of violence; two counts of attempted armed bank extortion; nine counts of using a firearm during and in relation to a crime of violence; three counts of carjacking; three counts of kidnapping; three counts of possession of a firearm by a felon; and one count of armed bank extortion.

5

(1) the statement that agents "found a track to the address 124 Rebel Ridge Rd" in the GPS data; (2) the representation that "[t]he same two males stayed at 124 Rebel Ridge Rd. from July 27, 2015 – Oct. 25, 2015" and the vacation rental employee stated that the two males placed a deposit on "'Southern Comfort' to be occupied on Nov. 16, 2015"; (3) the mischaracterization of law enforcement officers' observations during surveillance of 380 Allison Drive; (4) the statement that "NCHP trooper that was involved in the vehicle chase on Sept. 3, 2015 identified Witham to be the driver who fled him during the earlier chase"; (5) the statement that "each [black bag seized from the subjects] contained black rubber gloves" and Plaintiff's bag also contained a stocking cap; (6) the representation that "[t]he driver ignored the emergency lights & siren of the NCHP vehicle and proceeded on I-26 east bound to Long Shoals Road, at which point it existed the interstate"; and (7) the statement that the subjects "fled in the victim's vehicle & have not been located" and that the vehicle was later found, having been set on fire. [CR Doc. 169 at 7, 12, 17, 18].  Plaintiff also alleged that the prosecutor knowingly presented misleading evidence and false testimony at the June 2, 2016 suppression hearing on these and other matters.  [Id.].  Plaintiff again requested a Franks hearing.  [See CR Docs. 169 at 5-6; 171 at 2].

The Tennessee district court denied Plaintiff's Motion for New Trial because Plaintiff failed to satisfy his burden for obtaining either a post-trial Franks hearing or a new trial based on the alleged falsities. It found that, "[a]t most, [Plaintiff] has presented minor inconsistencies in the descriptions of GPS points, accounts of how many men placed a deposit on Southern Comfort, and reports of who came and went from the cabin during surveillance … [and] [Plaintiff] provides no evidence either that these differing statements were made intentionally or recklessly, or that they were material to the magistrate judge's finding of probable case." United States v. Benanti, No. 3:15-CR-177-TAV-CCS, 2017 WL 2990856, at *3 (E.D. Tenn. July 13, 2017).

Plaintiff was sentenced to four consecutive life terms plus another 155 years of imprisonment. [CR Doc. 204].

On direct appeal, Plaintiff raised numerous claims, arguing that officers lacked probable cause to search the cabin at 380 Allison Drive;[7] that the

---

[7] Specifically, Plaintiff argued that: the offenses alleged in the warrant affidavit did not tie to each other and did not tie to 380 Allison Drive; the warrant affidavit contained false information (that two white males and a white female were identified as being involved in the April 28, 2015 kidnapping and failed bank robbery of the Y-12 Credit Union, that a state trooper involved in the September 3, 2015 vehicle chase identified Witham as the driver who fled during an earlier chase, and that a deposit was placed on 380 Allison Drive by two white males); and without evidence from the 380 Allison Drive search, the subsequent warrants are invalid.

district court erred by denying his request for a <u>Franks</u> hearing;[8] and that

Plaintiff was entitled to a new trial because the prosecution engaged in

misconduct.[9]    The Sixth Circuit Court of Appeals affirmed Plaintiff's

convictions.  <u>United States v. Benanti</u>, 755 F. App'x 556 (6th Cir. 2018), <u>cert.</u>

<u>denied</u>, 139 S. Ct. 1645 (2019).  With regards to Plaintiff's claim that there

was no probable cause for the search warrant, the Sixth Circuit concluded

as follows:

> Here, the affidavit summarized the entirety of the agents'
> investigation: the two abductions of bank employees in Knoxville,
> the September 3rd chase in a nearby area, Benanti's arrest
> shortly after leaving the cabin, the surveillance tools in his
> possession, and the crumpled note listing names and addresses
> of three bank employees.  These facts provided ample basis to
> search the cabin.
>
> Benanti counters that the affidavit gave the magistrate
> judge no reason to think that the two abductions and bank
> robberies were both committed by the same two men.  But the
> affidavit gave several reasons to believe the same men were at
> work.  Both crimes occurred in Knoxville, only a few months

---

[8]  Plaintiff argued that the search warrant affidavit contained numerous misrepresentations, including that the affiant failed to disclose that witnesses to the second bank robbery had reported a possible third culprit; that the affiant failed to disclose that witnesses to the second bank robbery had disagreed about one of the culprits' race; that the affiant failed to explain that the GPS device yielded a latitude and longitude rather than a precise address; and that an officer had identified Witham as the driver from the September 3rd chase.  <u>See</u> <u>Benanti</u>, 755 F. App'x at 560.

[9] Specifically, Plaintiff argued that the district court should have granted a new trial, or at least an evidentiary hearing, because the prosecution falsely said that the GPS device provided a precise address, colluded with his defense attorney to obtain privileged information, fed the media false information to inflame the jury venire, and falsely told the jury that only two persons were involved in the crimes.  <u>See</u> <u>Benanti</u>, 755 F. App'x at 561-62.

apart. And in both, two masked men forced bank employees to rob their banks while the men instructed the employees on a cell phone.

Benanti, 755 F. App'x at 560.

With regards to whether Plaintiff was entitled to a Franks hearing, the Sixth Circuit found that Plaintiff "failed to show that the alleged inaccuracies in the search warrant application were knowing or reckless falsehoods… [a]nd the magistrate judge could easily have found probable cause without them." Benanti, 755 F. App'x at 560.

As to Plaintiff's allegations of prosecutorial misconduct, the Sixth Circuit concluded that the district court did not abuse its discretion by denying Plaintiff's Motion for New Trial because the record contradicted some of Plaintiff's assertions, the alleged new evidence of misconduct was speculative, and the alleged misconduct was unlikely to have affected the trial's outcome. Benanti, 755 F. App'x at 562.

While Plaintiff's direct appeal was pending, Plaintiff filed a Rule 60(b) Motion asking the court to reconsider the order denying his Motion for New Trial. [CR Doc. 268]. Plaintiff argued, *inter alia*, that the prosecutors presented knowingly false evidence at the June 2, 2016 suppression hearing and at trial that: 124 Rebel Ridge Road was part of the GPS data recovered following the September 3, 2015 vehicle chase; maps represented to be a

part of the GPS data, whereas they were fabricated; two white men placed a deposit and moved into 380 Allison Drive; and Trooper Reynolds' observations during the vehicle chase established probable cause to arrest Plaintiff. The district court denied the Rule 60(b) Motion, <u>United States v. Benanti</u>, No. 3:15-CR-177-TAV-DCP-1, 2019 WL 2359563 (E.D. Tenn. June 4, 2019), and the Sixth Circuit affirmed, <u>United States v. Benanti</u>, No. 19-5805 (6th Cir. July 22, 2020).

In the instant civil case, Plaintiff alleges that the search warrant affidavit that Defendant Poynter submitted in this Court to Magistrate Judge Dennis Howell on November 26, 2015 contained the following seven false statements in violation of Plaintiff's Fourth Amendment rights:

(1) "FBI … examined a GPS device found in the abandoned, stolen vehicle and found a track to the address of 124 Rebel Ridge Road;"

(2) "The same two males stayed at 124 Rebel Ridge Rd from July 27, 2015 – October 25, 2015;"

(3) "The employee said the two males placed a deposit on Southern Comfort (380 Allison Dr) to be occupied on Nov 16, 2015;"

(4) "The NCHSP trooper who was involved in the vehicle chase on Sept. 3, 2015 positively identified Witham to be the driver who fled him during the earlier chase;"

(5) "The driver ignored the emergency lights and siren of the NCHSP vehicle and preceded on I-26 East bound to Long Shoals road, at which point it exited the interstate;"

10

(6) "[E]ach [Black Bag] contained 'black rubber gloves' and Benanti's also contained a 'stocking Cap;'" and

(7) "[Y]our affiant was notified by HCSO investigators that a surveillance team had observed a gray Nissan Pathfinder, occupied by two white males leaving the target location."

[Doc. 1 at 5-15].

Plaintiff alleges that each of the Defendants knew of the falsity of these statements before the search warrant was filed and that Defendant Lewen participated in the warrant's preparation in his administrative or investigative, rather than prosecutorial, capacity.  Plaintiff further alleges that Defendant Blanton testified falsely at the June 2, 2016 suppression hearing.

On December 17, 2019, the Court conducted a frivolity review of the Complaint and allowed the claims against the various Defendants to proceed.[10]  [Doc. 5].

On May 1, 2020, Defendants filed a Motion to Dismiss.  [Doc. 13]. Plaintiff responded [Doc. 17] and Defendants replied [Doc. 18].  Also pending

---

[10] The case was assigned to Judge Frank D. Whitney at that time.  The Order on initial review did not separately address Plaintiff's Fifth Amendment claim against Defendant Blanton but it will be addressed in this Order in an abundance of caution.

are Plaintiff's Motion to Substitute Defendants [Doc. 16][11] and Motion for Leave to File Sur-Reply [Doc. 21].

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a complaint be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. In reviewing a complaint, a court must accept the truthfulness of all factual allegations, but it is not required to assume the truth of "bare legal conclusions." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011). An affirmative defense such as res judicata may be raised under Rule 12(b)(6) "only if it clearly appears on the face of the complaint." Richmond, Fredricksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).

## III. DISCUSSION

---

[11] Plaintiff moves to substitute Defendants Brian O'Hara and Reanna O'Hara with Brian O'Hare and Reanna O'Hare based on information contained in Defendants' pleadings indicating that there is no agent named Reanna O'Hara and that Agent Brian O'Hara was not involved in Plaintiff's criminal case. Defendants do not oppose Plaintiff's Motion substituting the correct names so long as the substitution is conditioned on the Court's acceptance of Defendants' filings on behalf of Brian O'Hare and Reanna O'Hare, termination of Brian O'Hara as a Defendant, and acknowledgement that Brian O'Hare and Reanna O'Hare do not need to be served. [See Doc. 19].

## A. Official Capacity Claims

The purpose of <u>Bivens</u> is to "deter individual federal officers from committing constitutional violations." <u>Holly v. Scott</u>, 434 F.3d 287, 291 (4th Cir. 2006) (quoting <u>Correctional Servs. Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001)). However, "a <u>Bivens</u> action does not lie against either agencies or officials in their official capacity." <u>Dao v. Chao</u>, 306 F.3d 170, 184 (4th Cir. 2002) (citing <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-86 (1994)). Accordingly, Plaintiff's claims for damages against Defendants in their official capacities are not cognizable under <u>Bivens</u> and will be dismissed.

## B. Individual Capacity Claims

With respect to Plaintiff's claims against Defendants in their individual capacities, Defendants argue that Plaintiff is precluded from asserting such claims under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) and by the doctrine of *res judicata*.

### 1. <u>Heck v. Humphrey</u>

In <u>Heck</u>, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." <u>Heck</u>, 512 U.S. at 487. If the Court answers this question in the affirmative, then "the complaint must be dismissed unless the

13

plaintiff can demonstrate that the conviction or sentence has already been invalidated." Bishop v. Cty. of Macon, 484 F. App'x 753, 755 (4th Cir. 2012) (citation omitted).

Here, Plaintiff's claims would necessarily imply the invalidity of his conviction. Plaintiff contends that his constitutional rights were violated in connection with the search of the cabin at 380 Allison Drive and during the hearing on his motion to suppress. If Plaintiff were to succeed on his claim that the search was unconstitutional, that would imply that the evidence that was recovered from the rental cabin should have been suppressed in the criminal case. This evidence was essential to the Government's criminal case against Plaintiff.

Plaintiff argues that Heck does not apply because "success here would not *necessarily* invalidate the conviction." [Doc. 20 at 3 (emphasis in original)]. Plaintiff also argues that he "in no way challenges the conviction or requests damages for imprisonment." [Id.]. Plaintiff misses the point of Heck. That case is not limited to a civil claim that necessarily amounts to a collateral attack upon the criminal judgment itself (i.e., a claim that "necessarily" invalidates the conviction). It applies where the claim made in the civil action would result in an inconsistency between the civil judgment and criminal conviction that would "*imply* the invalidity" of the conviction.

14

Heck, 512 U.S. at 487 (emphasis added). That is an entirely different standard.

Because the redress that Plaintiff seeks in this action would call into question the admissibility of this evidence and thus the validity of his conviction, the Court concludes that this suit must be dismissed pursuant to Heck.

### 2. Res Judicata

The doctrine of *res judicata* encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel. In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)). Claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." Lucky Brand Dungarees, Inc. v. Marcel Fashion Grp., Inc., 140 S. Ct. 1589, 1594 (2020). Issue preclusion is more narrowly drawn and applies when the later litigation arises from a different cause of action between the same parties. Varat, 81 F.3d at 1315. Issue preclusion operates to bar a party "from relitigating an issue actually decided in a prior case and necessary to the judgment." Lucky, 140 S. Ct. at 1594 (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)).

For issue preclusion to apply, the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4ᵗʰ Cir. 1998). The Fourth Circuit has held that "[a] suppression hearing in an earlier state criminal trial collaterally estops the relitigation of the same issues in a § 1983 action if the elements of collateral estoppel are met." Gray v. Farley, 13 F.3d 142, 146 (4ᵗʰ Cir. 1993) (citing Allen, 449 U.S. at 105).

In the instant case, Plaintiff raises the identical issue that was previously litigated – that false statements in the warrant affidavit violated the Fourth Amendment. A review of the record in the criminal case and appeal, of which the Court takes judicial notice,[12] reveals that Plaintiff raised this issue in his Motion to Suppress [CR Doc. 33], at a suppression hearing [CR Doc. 48], in his *pro se* Motion for New trial [CR Doc. 169], and on direct

---

[12] "When entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issues of fact." Andrews v. Day, 201 F.3d 521, 524 n. 1 (4ᵗʰ Cir. 2000).

Case 1:19-cv-00147-MR   Document 24   Filed 09/11/20   Page 16 of 24

appeal.  See generally Fed. R. Ev. 201; see, e.g., [CR Doc. 33] (arguing that the affidavit misrepresented that two white males were the subjects); [CR Doc. 169] (raising allegedly false statements 1, 2, 3, 4, 5, and 6); [Sixth Cir. Case No. 17-5867, Doc. 41: Appellant's Brief] (raising alleged misrepresentation that two white males were the subjects, and allegedly false statements 1, 3, 4).

These issues were actually determined in the prior proceedings in ruling on Plaintiff's Motion to Suppress, Motion for New Trial, and on appeal. United States v. Benanti, No. 3:15-CR-177-TAV-CCS-1, 2016 WL 7079937, at *7 (E.D. Tenn. Dec. 5, 2016) (denying Plaintiff's Motion to Suppress because the affidavit submitted by Poynter was sufficient for the magistrate judge to reasonably make a finding of probable cause); United States v. Benanti,  No. 3:15-CR-177-TAV-CCS-1, 2017 WL 2990856, at *2-3 (E.D. Tenn. July 13, 2017) (denying Motion for New Trial and post-trial Franks hearing based on alleged falsities because Plaintiff presented, at most, minor inconsistencies and Plaintiff "provides no evidence either that these differing statements were made intentionally or recklessly, or that they were material to the magistrate judge's finding of probable cause"); United States v. Benanti, No. 3:15-CR-177-TAV-CCS-1, 2019 WL 2195224, at *2-3 (E.D. Tenn. May 21, 2019) (denying reconsideration of Plaintiff's allegation of

prosecutorial misconduct because Plaintiff presented minor inconsistencies and provided no evidence that these differing statements were made intentionally or recklessly); see also United States v. Benanti, 755 F. App'x 556 (6th Cir. 2018) (holding that the district court did not err by denying Plaintiff's motion to suppress because the search of 380 Allison Drive was supported by probable cause or by denying Plaintiff's motion for new trial based on his speculative claim of prosecutorial misconduct).

These determinations were a critical and necessary part of the Tennessee criminal proceedings. The Tennessee district court's rulings regarding the search warrant's validity, the existence of probable cause to search 380 Allison Drive, and the use of allegedly false information, were critical and necessary parts of the criminal proceedings. Plaintiff's suppression efforts were directed to a great deal of evidence that was presented at trial and, had those efforts proved successful, would have potentially invalidated seven subsequent searches. See United States v. Benanti, No. 3:15-CR-177, 2016 WL 8737192 at *1 n.1 (E.D. Tenn. Oct. 7, 2016) (noting that information evidence seized from the Allison Drive cabin was presented in affidavits in support of seven subsequent search warrants which, Plaintiff argued, must be suppressed as fruit of the poisonous tree should the 380 Allison Drive search be suppressed; he conversely

acknowledged that denial of the suppression motion for Allison Drive would render moot his omnibus motion to suppress the subsequent search warrants).  Indeed, Plaintiff has acknowledged on several occasions the importance of the 380 Allison Drive search to his conviction.  [See, e.g., CR Doc. 169 at 11 (arguing that "[a]ll of these statements separately affect the probable cause determination" and without the allegedly false statement about 124 Rebel Ridge Road being part of the GPS data all evidence would be suppressed and would likely have affected the jury determination."); CR Doc. 301 at 5 (Motion to Vacate pursuant to 28 U.S.C. § 2255 arguing that counsel was ineffective for failing to raise intentionally or recklessly false statements in the search warrant affidavit and that Plaintiff was prejudiced because, "without such evidence [his] verdict would likely have been different.")].  Plaintiff's efforts to invalidate the search warrant and to suppress the resulting evidence pervaded the proceedings in the Tennessee district court and on appeal.

Plaintiff had a full and fair opportunity to litigate the issues and strenuously did so in a Motion to Suppress, suppression hearing, *pro se* Motion for New Trial, and on appeal.  Plaintiff's criminal judgment is valid and final.  See Berman v. United States, 302 U.S. 211 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."); see, e.g.,

<u>Sheehan v. Saoud</u>, 526 B.R. 166, 177 n. 14 (N.D. W. Va. Jan. 28, 2015) (finding that a criminal judgment was final for purposes of collateral estoppel at sentencing). Plaintiff has been sentenced and his conviction has been affirmed on appeal. Accordingly, Plaintiff is estopped from relitigating these claims here.

Plaintiff attempts to avoid issue preclusion by arguing that, prior to his Complaint, he never previously raised the seven allegedly false statements in the warrant affidavit. [<u>See</u> Doc. 17 at 3]. This contention is refuted by the record, which reveals that Plaintiff previously raised at least six of the seven allegedly false warrant statements for grounds to challenge the warrant's validity, as previously discussed.[13] Moreover, Plaintiff cannot circumvent issue preclusion by restating his prior arguments and presenting new ones. <u>See generally</u> <u>United States v. United Technologies Corp.</u>, 782 F.3d 718, 728–729 (6th Cir. 2015) ("Issue preclusion does not disappear merely because the losing party puts on a better case the second time around."); <u>Daniels v. Agin</u>, 736 F.3d 70, 88 (1st Cir. 2013) (a party cannot circumvent

---

[13] Even the seventh allegedly false statement, which is not explicitly identified as such in the Motion for New Trial, is addressed in that Motion. Plaintiff devotes an entire page to the "Surveillance of 380 Allison Dr. Nov. 19-25, 2015," asserts that Defendant Blanton's suppression hearing testimony that a lot of people were coming and going from the cabin "is contrary to the conclusion that there w[ere] only two white males," and argues that "any reasonable officer would have furthered the investigation before arresting random individuals at that location." [CR Doc. 169 at 16].

issue preclusion "merely by presenting additional evidence that was available to it at the time of the first action."); Simmons v. Small Business Admin., 475 F.3d 1372, 1374 (Fed. Cir. 2007) (where the issues in the first and second action are the same, it is reasonable to require a party to bring forward in the first proceeding all evidence that supports its argument).

In short, issue preclusion applies, and Plaintiff is barred in the instant action from relitigating the constitutionality of the search of 380 Allison Drive. See Gray, 13 F.3d at 142 (affirming summary judgment for defendants on § 1983 excessive force claim because the issue was previously decided in plaintiff's state criminal case; "[t]he subject of the [suppression] hearing clearly was whether [plaintiff] had been beaten, and the state trial judge, in denying the motion to suppress, necessarily found that [plaintiff's] confession had not been coerced"); Hazlip v. Richardson, No. 1:11CV376, 2012 WL 2838386 (M.D.N.C. July 10, 2012) (on a motion to dismiss in a § 1983 action, finding plaintiff's Fourth and Fourteenth Amendment claims to be barred by collateral estoppel because plaintiff raised the same issues that were decided against him in a suppression hearing as part of a necessary and critical determination in that proceeding and plaintiff had a full and fair opportunity to litigate the issue in the previous forum); Knox v. Graham, No. 9:07-283-HMH0GCK, 2008 WL 2227239 (D.S.C. May 27, 2008) (on motion

for summary judgment in a § 1983 action, finding plaintiff's Fourth Amendment claim relating to a search and seizure to be barred by collateral estoppel where plaintiff had a full and fair opportunity to litigate the issue at a suppression hearing in the criminal case). Defendants' Motion to Dismiss based on *res judicata* grounds will therefore be granted.

### 3. Claims against Defendant Blanton

With respect to the claims against Defendant Blanton in his individual capacity, the Court concludes that such claims are also subject to dismissal as being barred by the doctrine of absolute witness immunity. The law affords "absolute immunity to those persons who aid in the truth-seeking mission of the judicial system." Day v. Johns Hopkins Health Sys. Corp., 907 F.3d 766, 771 (4th Cir. 2018). In a § 1983 case, "a trial witness has absolute immunity with respect to any claim based on the witness' testimony," without regard to whether that witness is a private party or a police officer. Briscoe v. LaHue, 460 U.S. at 325, 332-33 (1983); see also Rehberg v. Paulk, 566 U.S. 356, 367 (2012) (holding that "[t]hese factors that justify absolute immunity for trial witnesses apply with equal force to grand jury witnesses."). Plaintiff's allegation that Defendant Blanton violated Plaintiff's constitutional rights by testifying falsely at the suppression hearing is therefore barred, and Defendants' Motion to Dismiss will also be granted

on this alternative ground.  See Briscoe, 460 U.S. at 325, 332-33; Rehberg, 566 U.S. at 367.


**C.** **Plaintiff's Other Motions**

Plaintiff's Motion for Leave to File Sur-Reply [Doc. 21] will be granted to the extent that the Court has considered Plaintiff's Sur-Reply.  However, the arguments presented therein are largely moot and do not otherwise alter the Court's analysis of the issues in any respect.

Plaintiff's Motion to Substitute Defendants [Doc. 16] will be denied as moot.

**IV.** **CONCLUSION**

For the reasons stated herein, the Defendants' Motion to Dismiss is granted, Plaintiff's Motion for Leave to File Sur-Reply is granted, Plaintiff's Motion to Substitute Defendants is denied as moot, and the Clerk will be instructed to close this case.


## O R D E R

**IT IS, THEREFORE, ORDERED** that:

(1)     Defendants' Motion to Dismiss [Doc. 13] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**;

23

(2)     Plaintiff's Motion for Leave to File Sur-Reply [Doc. 21] is **GRANTED**; and

(3)     Plaintiff's Motion to Substitute Defendants [Doc. 16] is **DENIED AS MOOT**.

The Clerk is instructed to close this civil case.

**IT IS SO ORDERED.**

Signed: September 11, 2020

Martin Reidinger
Chief United States District Judge